GEORGE BONNAH v. HENRY McMORRAN.

*Authority of master of vessel—Recovery of seaman's wages.*

1. It is within the province of the master of a vessel, authorized to employ seamen, to *bind* both the *vessel* and the *owner* for their wages.

2. The master of a vessel made a *parol* contract for its purchase of the *owner*, who stood as *such* at the custom-house, and signed the usual papers for her employment. The master employed his son as a seaman, who understood that *both* the *owner* and the *vessel* were to be looked to for his wages. The master paid all the other seamen out of the vessel's earnings, and paid the bal-

64 MICH.—10.

ance of such earnings to the owner on the contract of purchase, and after so paying $4,000, and without his knowledge, though still in commission, the owner sold the vessel to a third party, and, in a suit brought by the son for his wages, denied his liability on the ground of the possession of the master under the contract, with plaintiff's knowledge.

*Held*, that plaintiff made out a case, and was entitled to a judgment.

Error to St. Clair. (Stevens, J.)    Argued November 17, 1886.    Decided January 6, 1887.

Assumpsit.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*W. E. Leonard* (*W. M. Cline* and *Albert McCall*, of counsel), for appellant.

*Atkinson & Vance*, for defendant.

CAMPBELL, C. J.    Plaintiff sued defendant, as owner of a scow. for seaman's wages.    The defense was that the father of plaintiff was in possession under a parol contract of purchase, with plaintiff's knowledge, and defendant for that reason was not liable.[1]    The circuit judge took the case from the jury entirely, and therefore it must be determined on plaintiff's showing.

Plaintiff gave testimony that his father, who was captain, employed him, and gave him to understand that both defendant and the vessel were to be looked to for his wages, which would certainly be within the master's province as authorized to employ seamen.    There was testimony which tended to show that the father supposed he had an agreement which gave him as much time as he chose to buy and pay for the vessel; further, that he paid all the other seamen but his son

---

[1] The defendant gave notice that the plaintiff's father was the owner of the scow under a contract from defendant, and had the sole possession, charge, management, and control of the boat, and received to his own use her entire earnings, the *title* being in defendant as security for the purchase money.

out of the vessel's earnings, and paid the entire balance each year, as he got it, to defendant, with that view. There was testimony indicating that plaintiff had been informed of his father's expectation, but it is not certain that he understood in what shape the supposed contract was.

It appears, further, that defendant stood as owner at the custom-house, and signed the usual papers for her employment.

In March, 1884, defendant conveyed the vessel to one Runnels for a consideration of $2,799. The captain, plaintiff's father, was still in commission, and not informed of the sale, which was not recorded for a year after it was made. He swears he had paid $4,000 upon the vessel.

We do not feel disposed to discuss how far a verbal contract or understanding, such as Capt. Bonnah refers to, was binding on anybody. It cannot be claimed that, as he states it, defendant could repudiate it, if valid, and keep all the money which he did keep. By the employment of plaintiff he had a valid claim against defendant, unless his father was in under an independent control, and defendant out. But, as a matter of fact, defendant received all the earnings, including the money which should have been paid plaintiff, and by his sale to Runnels put it out of his power to carry out the only contract which stood—if any existed—between him and the claims of plaintiff. He cannot repudiate the contract, and hold plaintiff cut off by it, and retain the earnings.

The policy of the law is designed to protect seamen from fraud and oppression, and relieve them from unfair advantage. By section 4535 of the Revised Statutes of the United States, it is declared that—

" No seaman shall, by any agreement other than is provided by this title, forfeit his lien upon the ship, or be deprived of any remedy for the recovery of his wages to which he would otherwise have been entitled; and every stipulation in any

agreement inconsistent with any provision of this title, and every stipulation by which any seaman consents to abandon his right to his wages in the case of the loss of the ship, or to abandon any right which he may have or obtain in the nature of salvage, shall be wholly inoperative.''

If this statute applies, and we are inclined to think it does, there can be no doubt of plaintiff's right to recovery. But, whether it applies or not, the case shows that there was a distinct employment on regular wages, and that defendant received and kept the vessel's earnings, and has not recognized any binding contract which would put him on any different footing from any other owner. Moreover, the captain was his agent, and any agreement which would pay over plaintiff's wages to defendant for no valuable consideration could not be valid or enforcible against a seaman.

In our opinion, plaintiff made out a case, and should have recovered. The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.

